614 A.2d 324

In re Charles KASYCH, Sr. and Eva Kasych Trust.

Appeal of Charles KASYCH, Jr., Anna Kasych, Julia Kasych Olaynick and Mary Kasych Markowicz.

Superior Court of Pennsylvania.

Argued July 30, 1992.

Filed Oct. 8, 1992.

384

Joan R. Sheak, Allentown, for appellants.

Charles B. Calkins, York, for Calkins and Buchanan, participating parties.

Larry R. Roth, Allentown, for Calkins and Buchanan, participating parties.

Before MONTEMURO, FORD ELLIOTT and CERCONE, JJ.

MONTEMURO, Judge:

This is an appeal from an order granting appellees' petition to partition property held in trust for all of the litigants. Three issues are raised on appeal. First, whether the chancellor erred in finding that the trust property was subject to partition. Second, whether the chancellor abused his discretion in determining the value of the trust property. Third, whether the chancellor erred in upholding a deceased beneficiary's bequest of her interest in the trust property.

The facts in this case trace the squabble of seven siblings over the control of family owned property. On July 24, 1957, the Kasych family acquired a 173 acre property ("Homestead Property"), with the title placed in the names of Charles Kasych, Sr. and Charles Kasych, Jr. On March 20, 1972, the Homestead Property was placed in trust for the Kasych family ("Trust Agreement"). Charles Kasych, Sr., Charles Kasych, Jr, and Helen Buchanan were appointed as trustees for the equitable and beneficial ownership of Charles Kasych Sr, his wife Eva Kasych, and their seven children; Charles Kasych Jr., Mary Kasych Markowicz, Anna Kasych, Julia Kasych Olaynick, Helen Kasych Buchanan, Mildred Kasych Calkins, and Vera Kasych. The Trust Agreement provided that with a majority vote, the trustees were empowered with the exclusive right to manage and maintain the Homestead Property. The decision to sell, however, required a unanimous trustee vote.

If in the event that a beneficial owner desired to dispose of his share of the Homestead, the other beneficial owners had the exclusive right to purchase that share at a price equal to the sellers' contribution to purchasing the property in 1957.[1]

Charles Kasych, Sr. died intestate on November 23, 1975, and his wife Eva died intestate on February 16, 1976. Letters of Administration were granted for both estates to Charles Kasych, Jr. Objections were filed by Helen Buchanan, Mildred Calkins, and Vera Kasych to the accountings and the inventories for both of their parents' respective estates. After the actions were consolidated, both parties indicated that the family had reached an agreement ("Settlement Agreement"). On October 18, 1983, the terms of the Settlement Agreement were placed on the record and, after which, each party testified that they both understood and agreed with all of the terms of this agreement. One of the terms of the Settlement Agreement concerned the Homestead Property. This term provided that the 173 acre property be divided into two tracts. The trustees were to use their best efforts to sell Tract 1, which consisted of 150 acres of undeveloped land. Tract 2, which consisted of approximately 23 acres of land and a farm house, was to be conveyed by the trustees to Charles Kasych, Jr. The settlement further provided that if Tract 1 could not be sold within three years, the parties have the right to bring an action in partition.

On September 15, 1986, Vera Kasych died without issue. By the terms of her will, she devised her entire estate to her sister Helen Buchanan. She also stated in her will that, in the event that the devise of her estate does not give Helen Buchanan her interest in the Homestead Property, she expressly exercised her testamentary power of appointment to appoint her interest in the property to Helen Buchanan.

On November 13, 1989, appellees Helen Buchanan, individually and as Executrix of the Estate of Vera Kasych, and Mildred Calkins petitioned to partition Tract 1. The other

1. Appellee, Helen Buchanan contributed $12,500, Mildred Kasych Calkins contributed $2,651, and decedent Vera Kasych contributed $2,830.42, of the total purchase price of $80,000.

four non-petitioning siblings opposed partition. The chancellor found that the petitioners were: (1) entitled to partition, (2) that the property could not be partitioned without spoiling the whole, and (3) that the 150 acre Tract 1 was worth $2,000,000. This appeal followed.

In reviewing a chancellor's decision to grant a petition to partition, this court is limited to whether the chancellor's findings of fact are supported by competent evidence, whether an error of law was committed, or whether the chancellor committed a manifest abuse of discretion. *Alderfer v. Pendergraft*, 302 Pa.Super. 210, 448 A.2d 601, 603 (1982). Conclusions of law or fact, being derived from nothing more than the chancellor's reasoning from underlying facts and not involving a determination of credibility of witnesses, are reviewable. *Krosnar v. Schmidt, Krosnar McNaughton, Garrett Co.*, 282 Pa.Super. 526, 534, 423 A.2d 370, 374 (1980).

The first issue presented for our review is whether appellees are entitled to partition. "The purpose of partition is to afford those individuals who no longer wish to be owners the opportunity to divest themselves for a fair compensation." *Beall v. Hare*, 405 Pa. 288, 292, 174 A.2d 847, 849 (1961). As a general rule, owners of undivided interests in real property have an absolute right to partition. *Hyatt v. Hyatt*, 273 Pa.Super. 435, 437, 417 A.2d 726, 728 (1979). However, parties are free to restrict that right. *Fuhrman v. Doll*, 305 Pa.Super. 277, 282, 451 A.2d 530 (1982). Appellants argue that appellees' remedy of partition is precluded by paragraph 3(a) of the 1972 Trust Agreement. This paragraph provides:

(a) If any equitable and beneficial owner desires to dispose of his or her own interest, then in such event, the surviving equitable and beneficial owners, shall have the sole right to purchase such interest at the designated contribution in money of such individual, as set forth in "Exhibit A" herein.

Furthermore, appellants contend that the 1983 Settlement Agreement, at most, modified the Trust Agreement for three years to permit a possible sale of Tract 1, but did not alter the parties limited right to dispose of their beneficial

interest. Thus, appellant argues that if appellees wish to sell their equitable and beneficial interests, their compensation is limited to their 1957 contribution to the Homestead Property. The record belies this argument.

The purpose of the 1983 Settlement Agreement was to untangle the web of discontent harbored by the Kasych siblings by permitting them to sever their economic ties arising from their parents' respective estates. One of the terms of the Settlement Agreement provided for the disposition of the Homestead Property. This portion of the settlement divided the property into two tracts; conveying Tract 2 to Charles Kasych, Jr., and attempting to sell the remaining Tract 1. The Settlement Agreement also provided:

> In the event the the trustees shall not have sold Tract 1 within three years following the effective date of this agreement, any individual may bring an action for partition. . . .
> Until Tract No. 1 is sold, each of the individual parties hereto shall be entitled to a one-seventh interest in the net income, if any, earned with respect to said property, and be liable for one-seventh of the expenses and a carrying charges with respect to said property. Henceforth, from the effective date of this agreement, and notwithstanding anything to the contrary contained in the aforementioned declaration of ownership and trusteeship, each of the individual parties hereto shall be deemed to own a one-seventh undivided interest in Tract No. 1.

(R. 458–59). Thus, even assuming that the Trust Agreement initially limited the parties remedies if they desired to divest their respective interests in the Homestead Property, it is clear that the 1983 Settlement Agreement expressly provided for either the sale of Tract 1, or its partition. The Settlement Agreement providing for the sale or partition of the Homestead Property did not violate the limited remedies set forth in the Trust Agreement since this agreement had unanimous trustee approval.[2] Therefore, this case is distinguishable from the cases cited by appellant wherein there was evidence that

2. Paragraph 4 of the Trust Agreement provided the property could not be sold in either whole or part absent unanimous trustee approval.

the intent of the parties was to preclude partition. *See e.g. Fuhrman v. Doll,* 305 Pa.Super. 277, 451 A.2d 530 (1982) (deeds, bylaws, constitution, and the actions of the association members indicated that membership did not carry an entitlement to partition). In accordance with the expressed terms of the 1983 Settlement Agreement, appellees were entitled to partition.

■ After finding that partition was not precluded by the Trust Agreement, the chancellor found that partition cannot be accomplished without spoiling the whole. Since neither party disputes this determination, the method of partition must be by private sale in accordance with Pa.R.C.P. 1563. Rule 1563 provides:

**Property Not Capable of Division without Prejudice. Sale. Objections.**

(a) Except as otherwise provided in Subdivision (b), property not capable of division without prejudice to or spoiling the whole shall be offered for private sale confined to the parties.

(b) Parties defendant owning a majority in value of the property may object in writing to any sale, requesting that the property be awarded to them at its valuation fixed by the court and that their interests in the same remain undivided. Upon such request the entire property shall be awarded to the parties objecting to sale, as tenants in common, subject to the payment to the parties desiring partition and sale of the amounts of their respective interests based upon the valuation. The amounts due the parties shall be charged as liens upon the property, to be paid in such manner and time as the court shall direct.

After receiving evidence as to the value of Tract 1, the chancellor placed its value at $2,000,000. Appellant asserts that this $2,000,000 valuation is not supported by the record. Appellants' expert witness, after discussing the problematic nature of developing Tract 1 for residential purposes, opined that the property was worth $1,500,000. Appellees' expert witness gave two values for Tract 1 depending on obtaining a favorable point of access to the property. "Under a Premise

No. I, which was an assumption that access to the property could be gained at a traffic light at the intersection of Municipal Drive and MacArthur Road, I estimated the value of the property with direct access from that point at $2,675,000.00. Under Premise No. II, wherein access is not guaranteed at that intersection, I arrived at an estimate of value of $1,480,-000.00." (N.T. 3/19/90 at 36). The Chancellor, after receiving this conflicting expert testimony as to the fair market value of the property, placed the value in between the range of the expert's estimates. After our independent review of the record, we find that there is ample evidence to support the chancellor's determination.

The third issue raised for our review is whether Vera Kasych's bequest of her interest in Tract 1 is valid. Appellants argue that the terms of the 1972 Trust Agreement require that upon death, a beneficiary's interest automatically reverts to the surviving beneficial owners and that, therefore, her specific devise or appointment to Helen Buchanan is a nullity. However, the expressed provision of the Trust Agreement indicates otherwise. Paragraph 3(b) of the 1972 Trust Agreement provides for the disposition of property at death. This paragraph states:

> (b) Upon the death of any equitable and beneficial owner, the share held by said deceased owner shall pass to issue, per stirpes, and if no issue, to the surviving equitable and beneficial owners, appointees of deceased equitable and beneficial owners or issue of deceased equitable and beneficial owners, per stirpes.

> Disposition by Will shall contain a specific reference therein to this power.

Thus, under Paragraph 3(b) of the Trust Agreement, if there is no surviving issue, the beneficial interest can pass to appointees of the deceased beneficial owners, if the disposition by will makes specific reference to this power. The decedent's will does just that. On May 10, 1985, Vera Kasych executed a will which provided for a gift of her residue estate to her sister Helen Buchanan. The will provided in pertinent part:

the above gift of the residue of my estate shall include any interest I have under a certain family trust dated March 20, 1972. Although my interest therein was modified by a settlement ... from an interest as a trust beneficiary to that of an owner of a one seventh undivided interest ... for should that settlement not be given effect or if for any reason it becomes necessary to exercise the power of appointment granted to me in said family trust in order for me to pass my interest therein ... I hereby exercise the testamentary power given me under the Declaration of Ownership and Trusteeship of the Kasych Family Trust ... so as to appoint ... my sister Helen Buchanan.

(R. 442a). The decedent initially assumed that the 1983 Settlement Agreement provided her with an interest that would simply pass to her residual devisee notwithstanding the restriction as to disposition of her interest at death contained in the Trust Agreement. However, even assuming that the Settlement Agreement did not provide her with the ability to simply devise her interest, the decedent properly exercised her power of appointment provided in the Trust Agreement. Therefore, appellants' challenge to the validity of this bequest is without merit.

Accordingly, we affirm.